STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Jaime ROMERO, Defendant-Appellant.

Supreme Court

*No. 2007AP1139–CR. Oral argument November 5, 2008.
—Decided May 7, 2009.*

2009 WI 32

(Also reported in 765 N.W.2d 756.)

12

For the plaintiff-respondent-petitioner the cause was argued by *Michael J. Losse,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-appellant there was a brief by *Thomas E. Hayes,* and the *Law Offices of Michael E. Hayes,* Milwaukee, and oral argument by *Thomas E. Hayes.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The State seeks review of an unpublished decision of the court of appeals reversing a judgment of the Circuit Court for Milwaukee County, Dennis P. Moroney, Judge.[1] The circuit court denied defendant Jaime Romero's motion to suppress evidence that law enforcement officers seized during the execution of a search warrant at the defendant's residence. The defendant was convicted of the manufacture, distribution, or delivery of more than

[1] *State v. Romero,* No. 2007AP1139–CR, unpublished slip op. (Wis. Ct. App. Mar. 18, 2008).

40 grams of cocaine as a party to a crime contrary to Wis. Stat. §§ 961.41(1m)(cm)4. and 939.05 (2005–06).[2]

¶ 2. The single issue on review is whether probable cause existed for issuance of the warrant to search the defendant's residence when the affidavit in support of the search warrant was based in part on statements of an unnamed participant in a police sting. We refer to this participant as Mr. X for ease of discussion.[3] Mr. X is quoted in the affidavit as saying that the cocaine he furnished to a confidential informant (who was cooperating with the police) was supplied by the defendant.

¶ 3. In deciding whether probable cause exists for the issuance of a search warrant, the reviewing court examines the totality of the circumstances presented to the warrant-issuing commissioner to determine whether the warrant-issuing commissioner had a substantial basis for concluding that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing.[4]

¶ 4. We conclude that the affidavit supporting the warrant to search the defendant's residence resting in

---

[2] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

[3] The record and the decision of the court of appeals refer to this participant as an "unwitting," apparently meaning a person who provides information to law enforcement but who does so unwittingly, that is, without the intent to provide information to law enforcement or the knowledge that he or she is doing so. The participant in the present case is distinguished from a citizen informer who by happenstance finds himself or herself in the position of a victim of or a witness to criminal conduct and relates the matter to the police. 2 Wayne R. LaFave, *Search and Seizure* § 3.3 at 98 (4th ed. 2004).

[4] *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

part on the statements of Mr. X meets the totality of the circumstances test. The warrant-issuing commissioner had a substantial basis for concluding on the totality of the circumstances that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing. We therefore sustain the warrant-issuing commissioner's determination that probable cause existed for issuance of the warrant in the instant case.

¶ 5. Having concluded that the warrant to search the defendant's residence was supported by probable cause, we need not decide the other issue the parties address in their briefs to this court, namely whether the "good faith" exception to the exclusionary rule would apply if probable cause did not exist for issuance of the warrant in the instant case.[5]

¶ 6. Accordingly, we reverse the decision of the court of appeals reversing the circuit court's judgment of conviction and affirm the judgment of conviction.

I

¶ 7. We summarize the facts relating to the circuit court's order denying the defendant's motion to suppress evidence seized during the execution of the search warrant at the defendant's residence.

¶ 8. On July 13, 2006, law enforcement officers in the city of Milwaukee applied for a warrant to search the defendant's residence. The application was supported by an affidavit of Officer Miguel Correa of the Milwaukee Police Department.

[5] For a discussion of the good faith exception under Article I, Section 11 of the Wisconsin Constitution, see *State v. Eason,* 2001 WI 98, ¶ 3, 245 Wis. 2d 206, 629 N.W.2d 625.

¶ 9. Officer Correa's seven-page affidavit largely describes a law enforcement operation in which a confidential police informant purchased cocaine from an unnamed individual, referred to herein as Mr. X. Mr. X claimed that he had obtained the cocaine from the defendant. Neither the confidential informant nor any police officer witnessed Mr. X acquire the cocaine from the defendant. In other words, Officer Correa's affidavit contains no affirmative allegation that he, any other law enforcement officer, or the confidential informant cooperating with the police had personal knowledge that the defendant furnished the cocaine to Mr. X, who in turn gave the cocaine to the confidential informant.

¶ 10. Officer Correa's affidavit sets forth the following assertions of fact, among many others:

- A confidential informant told Officer Correa that within the last 72 hours the confidential informant had spoken with an unnamed individual (Mr. X) who claimed that he could purchase cocaine for the confidential informant from an unnamed third party.

- Officer Correa monitored a telephone call in which the confidential informant called Mr. X and ordered cocaine. Mr. X directed the confidential informant to meet him so that the two could go to the home of the unnamed third party to purchase cocaine.

- Officer Correa provided the confidential informant with money to buy the cocaine. Officer Correa searched the confidential informant's person and automobile for money, drugs, or other contraband before and after the confidential informant met with Mr. X.[6]

- Officer Correa and other law enforcement officers followed the confidential informant's vehicle to a

---

[6] Officer Correa did not, of course, have an opportunity to search Mr. X at any time.

place where the officers observed Mr. X enter the confidential informant's vehicle.

- Officer Correa and the other officers followed the confidential informant and Mr. X to an area near 205 E. Montana Street.

- A law enforcement officer named Corporal DiTorrice informed Officer Correa that shortly after the informants and law enforcement officers arrived at the area near 205 E. Montana Street, Corporal DiTorrice observed a person later identified as the defendant exit through the front door of 205 E. Montana Street, motion to Mr. X to go towards the alley/garage directly behind 205 E. Montana Street, and then walk towards that alley/garage area himself.

- A law enforcement officer named Detective Dalland informed Officer Correa that he observed Mr. X enter the garage through the open garage door; that after a short while he also observed Mr. X exit the garage and enter the confidential informant's automobile; and that he finally observed the confidential informant and Mr. X drive away and the garage door close.

- Corporal DiTorrice informed Officer Correa that he observed the person later identified as the defendant walk back to the front door of 205 E. Montana Street, look around before entering, and walk through the front door without waiting to be let in.

- Officer Correa personally observed the confidential informant travel with Mr. X and then let Mr. X out of his car.

- Officer Correa followed the confidential informant to a predetermined location, where he met and spoke with the confidential informant.

- The confidential informant told Officer Correa that Mr. X had entered the confidential informant's auto-

23

mobile and had directed the confidential informant to drive to the area of 205 E. Montana Street.

- The confidential informant told Officer Correa that while en route to 205 E. Montana Street, Mr. X ordered cocaine over the telephone.

- The confidential informant told Officer Correa that when the confidential informant and Mr. X arrived at their destination, Mr. X directed the confidential informant to stay in the car and that the confidential informant gave Mr. X money to buy cocaine.

- The confidential informant told Officer Correa that Mr. X exited the automobile and walked towards the garage behind a tan and brown house.

- The confidential informant told Officer Correa that Mr. X returned to the automobile a short time later and handed the confidential informant a clear sandwich bag containing material which the confidential informant believed to be cocaine.

- The confidential informant turned this sandwich bag over to Officer Correa. The bag contained an off-white, chalky substance which Officer Correa also believed to be cocaine.

- A sample of the material in the bag later tested positive for the presence of cocaine.

- The confidential informant told Officer Correa that Mr. X had referred to the person later identified as the defendant by the name "Jaime."

- Officer Correa discovered an active utilities account for 205 E. Montana Street in the name of "Jaime Romero," that is, the defendant's name.

- The confidential informant told Officer Correa that the defendant drove a Lincoln Navigator.

24

- Officer Correa, within 72 hours prior to signing his affidavit, personally observed a green Lincoln Navigator parked directly in front of 205 E. Montana Street.

- The license plate on the green Lincoln Navigator listed to the defendant, Jaime Romero of 205 E. Montana Street.

- Officer Correa showed the confidential informant a driver's license photo of the defendant, and the confidential informant identified the defendant as the person whom the confidential informant observed exiting the front door of 205 E. Montana Street and proceeding toward the garage which Mr. X entered.

- Officer Correa believed the confidential informant to be a credible person because Officer Correa knew that the confidential informant had assisted law enforcement officers in purchasing controlled substances on more than three prior occasions and because the confidential informant's assistance had resulted in more than three drug convictions.

¶ 11. Court Commissioner Barry Slagle authorized the search warrant. The warrant describes the premises to be searched as 205 East Montana Street, the lower unit of a beige-and-tan colored, two-story duplex residence in Milwaukee. The warrant describes the objects of the search as cocaine, several items related to the use or sale of cocaine, documents identifying the person in control of 205 E. Montana Street, weapons, and certain telecommunication devices.

¶ 12. Law enforcement officers executed the search warrant and seized over 147 grams of cocaine from the defendant's residence. The State charged the

defendant with the manufacture, distribution, or delivery of more than 40 grams of cocaine as a party to a crime.

¶ 13. The defendant moved to suppress the evidence seized during execution of the search warrant, arguing that probable cause did not exist for issuance of the warrant. The circuit court denied the defendant's motion.

¶ 14. After his motion to suppress evidence was denied, the defendant entered a plea of guilty to the crime charged. The circuit court accepted the defendant's plea and rendered a judgment of conviction.

¶ 15. The defendant appealed from the circuit court's judgment of conviction pursuant to Wis. Stat. § 971.31(10),[7] based on the circuit court's order denying the defendant's motion to suppress evidence. A divided court of appeals reversed the judgment of conviction and remanded the cause to the circuit court.

## II

¶ 16. A search warrant may issue only on probable cause. Thus we begin by setting forth the standards implicated in our review of probable cause in the context of a warrant for the search of a residence. We then apply these standards to the affidavit in the instant case.

---

[7] Wisconsin Stat. § 971.31(10) provides in full that "[a]n order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

## A

¶ 17. The United States Supreme Court has adopted a totality of circumstances standard for determining whether probable cause exists in an application for a search warrant.[8] The Court has explained that "the probable cause standard . . . is a practical, nontechnical conception" requiring a court to deal with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[9]

██ 

¶ 18. This court "accord[s] great deference to the warrant-issuing judge's determination of probable cause, and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause."[10] This "deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."[11]

---

[8] *State v. Kerr,* 181 Wis. 2d 372, 380, 511 N.W.2d 586 (1994) (citing *Illinois v. Gates,* 462 U.S. 213, 238 (1982)); *State v. Lopez,* 207 Wis. 2d 413, 425, 559 N.W.2d 264 (Ct. App. 1996).

[9] *Illinois v. Gates,* 462 U.S. 213, 231 (1983) (quotation marks and citations omitted).

*See also State v. Kerr,* 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994) ("Probable cause is not a technical, legalistic concept but a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." (quotation marks and citation omitted)).

[10] *State v. Kerr,* 181 Wis. 2d 372, 380, 511 N.W.2d 586 (1994) (quotation marks and citation omitted); *State v. Lopez,* 207 Wis. 2d 413, 425, 559 N.W.2d 264 (Ct. App. 1996).

[11] *State v. Kerr,* 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994) (citations omitted); *Lopez,* 207 Wis. 2d at 425.

¶ 19. The task of the warrant-issuing commissioner "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[12]

¶ 20. The veracity of a hearsay declarant and the basis of the declarant's knowledge are "highly relevant in determining the value of his report" but "these elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case." *Illinois v. Gates*, 462 U.S. 213, 230 (1983).[13] These elements should instead "be understood simply as closely intertwined issues that may usefully

---

When addressing whether probable cause for the issuance of a search warrant existed, this court is "confined to the record that was before the warrant-issuing commissioner." *Kerr,* 181 Wis. 2d at 378.

[12] *State v. Kerr,* 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1982) (quotation marks omitted; ellipsis in *Kerr*)). *See also State v. McAttee,* 2001 WI App 262, ¶ 9, 248 Wis. 2d 865, 637 N.W.2d 774 ("probable cause to arrest may be based on hearsay information that is 'shown to be reliable and emanating from a credible source'" (quoted source omitted))0; *Lopez,* 207 Wis. 2d at 425 (trial court must consider all circumstances including the veracity and basis of knowledge of persons supplying hearsay information).

[13] The United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213 (1982), adopted the totality of the circumstances test in place of the rigidly applied two-prong test in *Aguilar v. Texas,* 378 U.S. 108 (1964) and *Spinelli v. United States,* 393 U.S. 410 (1969). *See State v. Richardson,* 156 Wis. 2d 128, 140–41 & n.4, 456 N.W.2d 830 (1990) (explaining the *Gates* test).

illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. at 230.

¶ 21. To demonstrate a declarant's veracity, facts must be brought to the warrant-issuing officer's attention to enable the officer to evaluate either the credibility of the declarant or the reliability of the particular information furnished.[14] A declarant's credibility is commonly established on the basis of the declarant's past performance of supplying information to law enforcement.[15] Even if a declarant's credibility cannot be established, the facts still may permit the warrant-issuing officer to infer that the declarant has supplied reliable information on a particular occasion.[16] The

---

[14] 2 LaFave, *supra* note 3, § 3.3(a), at 100.

[15] *State v. Reed,* 156 Wis. 2d 546, 555, 457 N.W.2d 494 (Ct. App. 1990) (confidential informant's reliability may be established by evidence that the informant "ha[s] provided reliable information in the past."); 2 LaFave, *supra* note 3, § 3.3(a), at 100.

[16] 2 LaFave, *supra* note 3, § 3.3(a), at 101.

The word "reliability" is put to different uses in the case law. The standard practice, which we employ here, is to consider the reliability of information supplied on a particular occasion as a component part of a declarant's "veracity." *See Illinois v. Gates*, 462 U.S. at 230 n.4 (stating that courts have interpreted the "veracity" of an informant to "[have] two 'spurs'—the informant's 'credibility' and the 'reliability' of his information[.]"); 2 LaFave, *supra* note 3, § 3.3(a), at 100–01 (same). But some cases also appear to speak of a declarant's "reliability" as a synonym for the declarant's "veracity." *See, e.g., State v. Reed,* 156 Wis. 2d 546, 554–55, 457 N.W.2d 494 (Ct. App. 1990) (examining whether an informant was "sufficiently reliable to support issuance of the warrant").

reliability of the information may be shown by corroboration of details; this corroboration may be sufficient to support a search warrant.[17] If a declarant is shown to be right about some things, it may be inferred that he is probably right about other facts alleged.[18]

¶ 22. To demonstrate the basis of a declarant's knowledge, facts must be revealed to the warrant-issuing officer to permit the officer to reach a judgment whether the declarant had a basis for his or her allegations that evidence of a crime would be found at a certain place.[19] The basis of a declarant's knowledge is most directly shown by an explanation of how the declarant came by his or her information.[20] The basis of a declarant's knowledge also may be shown indirectly. The wealth of detail communicated by a declarant, for

It is not surprising that the courts are inconsistent in their use of the term "reliability." As we have stated, the *Gates* Court held that the concepts of "veracity," "reliability," and "basis of knowledge" are "closely intertwined" and serve simply to "illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Gates,* 462 U.S. at 230. The Court has not required that these concepts be given precise definitions or that the courts adhere to a rigid analytical procedure when examining a warrant that is based on information supplied by a hearsay declarant.

[17] *Lopez,* 207 Wis. 2d at 426 (independent police corroboration of the declarant's information imparts a degree of reliability to unverified details); *State v. Richardson,* 156 Wis. 2d 128, 141, 456 N.W.2d 830 (1990) (citing *Alabama v. White,* 496 U.S. 325, 332 (1990)).

[18] *Illinois v. Gates,* 462 U.S. at 244.

[19] 2 LaFave, *supra* note 3, § 3.3(a), at 100.

[20] *Id.* at 102.

example, may be sufficient to permit an inference that the basis of the declarant's knowledge is sound.[21]

██ ██

¶ 23. The veracity and basis of knowledge of a declarant are relevant whether the declarant communicates directly to the police or indirectly through another. Any declarant is a "person[] supplying hearsay information," and his or her veracity and the basis of his knowledge accordingly are within the totality of the circumstances relevant to the probable cause determination.[22] It would make little sense for the veracity of a

[21] *See Illinois v. Gates,* 462 U.S. 213, 244–46 (1983) (wealth of detail supplied by an anonymous informant demonstrated a fair probability that the anonymous informant had obtained his information either directly from the Gateses or from someone they trusted); 2 LaFave, *supra* note 3, § 3.3(a), at 102.

[22] *State v. Kerr,* 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1982)). *See also State v. Falbo,* 190 Wis. 2d 328, 337, 526 N.W.2d 814 (Ct. App. 1994) (trial court must consider all circumstances set forth in affidavit, including the veracity and basis of knowledge of persons supplying hearsay information).

*See also United States v. Satterwhite,* 980 F.2d 317, 322 (5th Cir. 1992) ("Where an informant's report is not based on personal knowledge, but rather on the information of a second individual, we must determine whether a substantial basis exists for crediting the second individual's information."); *People v. Pate,* 878 P.2d 685, 690 n.10 (Colo. 1994) ("[W]hen a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. Rather, he is called upon to evaluate this information as well as other information in the affidavit in order to determine whether it can be reasonably inferred that the informant had gained his information in a reliable way." (quotation marks and citation omitted)); *State v. Niehaus,* 452 N.W.2d 184, 190 (Iowa 1990) ("The magistrate must be pre-

declarant or the basis of the declarant's knowledge to be relevant to the probable cause determination when law enforcement officers obtain information directly from the declarant yet not relevant to the probable cause determination when officers obtain information from the declarant indirectly through another declarant. The extent to which a search warrant's supporting affidavit must demonstrate the veracity and basis of knowledge of a declarant may vary depending on the circumstances specific to each case.[23]

¶ 24. We reject the State's offer of a bright-line rule, namely that for purposes of an affidavit for a search warrant law enforcement officers "are not required to validate [the] reliability of a reliable informant's source" in attempting to demonstrate probable cause for the issuance of a search warrant.[24] The State relies on *State v. McAttee,* 2001 WI App 262, 248 Wis. 2d 865, 637 N.W.2d 774, for this bright-line rule, especially the following sentences: "[F]or purposes of probable cause to arrest, the police were entitled to rely on information from a known and reliable informant without independently determining the reliability of the informant's source or the source's information. . . . McAttee cites no authority requiring police to gain

_____

sented with a means of assessing the credibility of both the individual who spoke with the affiant, as well as a means of assessing the initial source of the information."); 2 LaFave, *supra* note 3, § 3.3(c), at 142 ("In the hearsay-upon-hearsay situation, as where an informant of established reliability tells police what someone else has told him, there is a need to establish veracity with respect to each person in the hearsay chain." (footnote omitted)).

[23] *See Illinois v. Gates,* 462 U.S. 213, 230 (1983).

[24] Brief and Appendix of Plaintiff-Respondent-Petitioner State of Wisconsin at 15.

additional information, corroborating that received from a reliable informant, before making an arrest."[25]

¶ 25. These sentences should not be taken out of context. The officers in *McAttee* (who arrested McAttee with probable cause but without a warrant) relied on the statements of a reliable confidential source about what other persons had told her about the crime. The reliable confidential source in *McAttee* (who was not present at the scene of the crime) provided the police with detailed information about her various sources supporting their veracity and the basis of their knowledge.[26] This detailed information provided corroboration. Furthermore, the law enforcement officers had independent corroboration of the reliable confidential source's statements.[27] The State's brief in *McAttee* correctly argued that "police had reasonable grounds to credit both the veracity and basis of knowledge of the persons supplying hearsay information."[28] Finally, if *McAttee* were interpreted as the State requests, *McAttee*

[25] *State v. McAttee,* 2001 WI App 262, ¶¶ 12, 14, 248 Wis. 2d 865, 637 N.W.2d 774.

In these sentences, the *McAttee* court speaks of a declarant's "reliability" when we and other cases would refer to the declarant's "veracity." As we explain at note 16, *supra,* this distinction in terminology does not reflect a substantive difference in the analytical framework.

[26] The reliable confidential informant's sources were identified as family members of the defendant, one of whom also was the confidential informant's best friend and all of whom inculpated the defendant in the same murder. *McAttee,* 248 Wis. 2d 865, ¶ 3.

[27] *McAttee,* 248 Wis. 2d 865, ¶ 13.

[28] State's brief to the court of appeals at 20 (citing *State v. Falbo,* 190 Wis. 2d 328, 337, 56 N.W.2d 814 (Ct. App. 1994)).

would silently reverse several other cases,[29] which the court of appeals does not have the power to do.

¶ 26. The *McAttee* decision does not create a bright-line rule that probable cause may be established without considering the reliability of the source of a reliable confidential informant. We agree with the court of appeals that the State's reliance on *McAttee* is misplaced. The court of appeals explained that "Wisconsin courts require some evidence of reliability of the proffered hearsay, even when it comes from a reliable CI [confidential informant]. . . . Hence, in *McAttee*, the third party hearsay, although reported by a reliable CI, established probable cause because it was corroborated in significant part by police investigation."[30] As the court of appeals explained, the *McAttee* court of appeals held only that the law enforcement officers under the circumstances of that case were entitled to rely on information from a known and reliable informant without independently determining the reliability of the informant's source or the source's information.[31]

¶ 27. In sum, a reviewing court must conclude that the totality of the circumstances demonstrates that the warrant-issuing commissioner had a substantial basis for concluding that there was a fair probabil-

---

[29] *See, e.g., State v. Lopez,* 207 Wis. 2d at 425–26 (considering relevant the reliability of information that a police informant received from a third person; stating that "the trial court must consider all of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information").

[30] *State v. Romero,* No. 2007AP1139–CR, unpublished slip op., 10–11 (Wis. Ct. App. March 18, 2008).

[31] *State v. McAttee,* 2001 WI App 262, 248 Wis. 2d 865, 637 N.W.2d 774.

ity that a search of the specified premises would uncover evidence of wrongdoing.[32]

## B

¶ 28. We examine the affidavit in light of the defendant's arguments that the affidavit is insufficient to establish probable cause.

¶ 29. In the instant case a confidential informant told a law enforcement officer what someone else had told him. In such a case, the veracity of each person in the chain is relevant. The defendant, in challenging the warrant-issuing commissioner's probable cause determination, does not contest the veracity of the confidential informant or the basis of his knowledge. Rather, the defendant challenges the veracity of Mr. X.[33]

¶ 30. The defendant thus focuses on the statements in the affidavit attributed to Mr. X, particularly Mr. X's claim to have purchased cocaine from the defendant. The defendant contends that the affidavit sets forth no basis for finding Mr. X credible or for finding reliable Mr. X's statement that the defendant furnished the cocaine.

¶ 31. The defendant points out that the affidavit does not state that the confidential informant or any

---

[32] *State v. Anderson,* 138 Wis. 2d 451, 469, 406 N.W.2d 398 (1987) (citing *Illinois v. Gates,* 462 U.S. 213, 236 (1983)). *See also State v. Higginbotham,* 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991) ("The duty of the reviewing court is to ensure that the magistrate had a substantial basis for concluding that the probable cause existed." (citation omitted)).

[33] The defendant does not challenge the basis of Mr. X's knowledge. Mr. X purported to pass on first-hand information to the confidential informant, that is, Mr. X's personal knowledge that the defendant supplied the cocaine.

law enforcement officer observed the alleged transaction between Mr. X and the defendant; does not state that the confidential informant or any law enforcement officer observed the defendant enter the garage where the drug transaction purportedly occurred; does not identify Mr. X or describe Mr. X's relationship to the defendant or to the confidential informant; and does not state that either law enforcement officers or the confidential informant knew Mr. X's identity.

¶ 32. We agree with the defendant that Officer Correa's affidavit is heavily dependent upon the veracity of Mr. X. We also agree with the defendant that although the affidavit describes Mr. X as representing that he had purchased cocaine in a garage behind the defendant's residence from a person later identified as the defendant, the affidavit does not show that any person other than Mr. X witnessed any part of this alleged drug transaction between Mr. X and the defendant. Neither the confidential informant nor any law enforcement officer directly witnessed any criminal activity in the defendant's garage or any criminal activity involving the defendant.

¶ 33. We also acknowledge that information concerning Mr. X is sparse indeed. Officer Correa's affidavit does not furnish Mr. X's name and does not describe Mr. X's relationship with either the confidential informant or the defendant.

¶ 34. Nevertheless we conclude that Officer Correa's affidavit passes muster as support for the warrant issued to search the defendant's residence. Reliance on information provided to a confidential informant by a participant in a crime has been approved by several courts even in the absence of constant visual contact with the participant conducting the

transaction.[34] Facts set forth in the affidavit demonstrate Mr. X's veracity to a degree sufficient to show, considering the totality of the circumstances presented to the warrant-issuing commissioner, that the commissioner had a substantial basis for concluding that there was a fair probability that a search would uncover evidence of wrongdoing at the defendant's residence.

¶ 35. First, the affidavit tends to establish the reliability of the information that Mr. X imparted (and thus Mr. X's veracity) by showing that law enforcement officers were able to corroborate some of Mr. X's assertions prior to seeking the warrant. It is established that "[i]ndependent police corroboration of [an] informant's information imparts a degree of reliability to unverified details."[35] In the present case, Mr. X predicted that a person would be waiting to meet him near the defendant's residence, that this person was named "Jaime," and that Jaime would supply cocaine to Mr. X. Law enforcement officers corroborated these assertions when they observed the defendant, Jaime Romero, emerge from the front door of his residence, motion to Mr. X to go toward the alley/garage directly behind the defendant's residence, and then proceed toward that area himself. The law enforcement officers verified that

[34] *See United States v. Artez,* 389 F.3d 1106, 1112–13 (10th Cir. 2004), and cases cited therein.

[35] *State v. Jones,* 2002 WI App 196, ¶ 15, 257 Wis. 2d 319, 651 N.W.2d 305 (quotation marks and citation omitted).

*See also Illinois v. Gates,* 462 U.S. 213, 244–45 (1983) ("It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." (quotation marks, brackets, and citation omitted)).

37

Jaime Romero lived at that address and that the substance Mr. X claimed he got from Jaime was in fact cocaine.

■

¶ 36. Second, the affidavit tends to establish Mr. X's credibility (and thus his veracity) by describing numerous statements that Mr. X made against his penal interest. When a declarant makes statements against his penal interest that are closely related to the criminal activity being investigated,[36] under circum-

---

[36] *See* 2 LaFave, *supra* note 3, § 3.3(c), at 143–44 ("[W]hether the admission is by a secondary source or by an informant speaking directly to the police, it must appear that the declaration against penal interest has a sufficient nexus to the information critical to the probable cause determination. . . . What is needed is a showing that the informant's statements against his own penal interest were closely related to the criminal activity for which probable cause to arrest or search is being established . . . ." (quotation marks and footnote omitted)).

*See also United States v. Jackson,* 818 F.2d 345, 349 (5th Cir. 1987) (concluding that an informant's self-incriminating statements provided "no significant indicia of [the informant's] reliability as to the charges he [made] against [the defendant]" because the informant's "information regarding [the defendant's] participation is not the part of the [informant's] confession that primarily incriminate[d] [the informant]" and because "[the informant's] inculpation of [the defendant] could reasonably be viewed as an attempt to curry favor and receive more lenient treatment from police officials"); *United States v. Miller,* 753 F.2d 1475, 1480 (9th Cir. 1985) (rejecting "the contention that [an informant's] statements could be credited because they were against his penal interest" on the ground that "the affidavit does not show any nexus between [the informant's] statements and the criminal activity occurring" on the property subject to a search warrant in that case); *Galgano v. State,* 248 S.E.2d 548, 550 (Ga. Ct. App. 1978) (concluding

stances providing the declarant with no apparent motive to speak dishonestly,[37] such statements may be taken as establishing the declarant's credibility and thus his veracity.

■

¶ 37. In the present case, Mr. X's statements against his penal interest were made under circumstances permitting an inference of credibility and thus veracity. Mr. X's statements inculpated both himself and the defendant in the same crime—a drug transaction occurring in a garage behind the defendant's residence —and related very closely to the State's allegation that the defendant possessed cocaine in his home. Moreover, the facts asserted in Officer Correa's affidavit do not suggest that Mr. X had any motive to falsely inculpate the defendant when speaking to the confidential informant, who had presented himself to Mr. X as nothing other than a purchaser of unlawful narcotics.

■

¶ 38. Although a person should not be deemed trustworthy merely because he admits that he is a criminal,[38] under the proper circumstances "the cred-

that under circumstances in which "there is no connection . . . between the information provided by [an] informant and the prior criminal activity to which [the informant] confesse[s]," the informant's admission of criminal activity "damages rather than supports his credibility.").

[37] *See* 2 LaFave, *supra* note 3, § 3.3(c), at 134 ("[A] person's statement against his penal interest carries with it an indicia of reliability if it may also be said that the statement was made under circumstances when he would have no reason to lie." (citing and quoting *Dutton v. Evans,* 400 U.S. 74 (1970) (quotation marks omitted)).

[38] *See* 2 LaFave, *supra* note 3, § 3.3(c), at 134 ("Unquestionably, the admission-against-penal-interest concept should not

ibility of an informant, for the purpose of finding probable cause, is established by the fact that his or her statement is against his or her penal interest."[39] In the present case nothing would alert the warrant-issuing commissioner that Mr. X had a motive to falsely accuse the defendant. Nothing in the affidavit would alert the warrant-issuing commissioner that Mr. X would get anything from law enforcement in return for asserting that he could get and did get cocaine from the defendant.

■■■

¶ 39. "[S]tatements against penal interests may be used to establish reliability even when the declarant is not aware that the listener is a police officer."[40] Indeed, the case can be made that a declarant's unwitting participation in a police sting serves to bolster his credibility. Professor LaFave, for example, contends that "as a general proposition there is more reason to rely upon [admissions made to a confidential informant] than admissions made directly to police, for in the latter situation there is always the chance that the informer is a stoolie who perceives he can admit to criminality without significant risk."[41]

---

be applied in such a casual fashion that criminals are thereby deemed more credible than disinterested 'citizen-informers,' for this would turn established Fourth Amendment doctrine on its head.").

[39] *State v. Anderson,* 138 Wis. 2d 451, 470, 406 N.W.2d 398 (1987).

[40] *State v. Anderson,* 138 Wis. 2d 451, 471, 406 N.W.2d 398 (1987).

[41] 2 LaFave, *supra* note 3, § 3.3(c), at 142–43.

*See also United States v. Castillo,* 866 F.2d 1071, 1077–78 (9th Cir. 1988) (concluding that an affidavit provided a substantial basis for crediting a hearsay statement because the

¶ 40. We agree with the defendant that Officer Correa's affidavit does not conclusively rule out the hypothesis that Mr. X implemented a ruse for the purpose of fooling the confidential informant into believing that Mr. X was obtaining cocaine from the defendant when it fact he already had obtained it from another source. Arguably, the inference that Mr. X tricked the confidential informant in this manner might be a reasonable one.

¶ 41. Nevertheless, "[t]he test is not whether the inference drawn [by the warrant-issuing commissioner] is the only reasonable inference. The test is whether the inference drawn is a reasonable one."[42] The warrant-issuing commissioner's inference from the affidavit that Mr. X got the cocaine from the defendant is reasonable.

\* \* \* \*

¶ 42. In deciding whether probable cause exists for the issuance of a search warrant, the reviewing court examines the totality of the circumstances presented to the warrant-issuing commissioner to determine whether the warrant-issuing commissioner had a substantial basis for concluding that there was a fair

declarant "was not aware that [the person to whom he spoke] was a DEA agent and had no apparent reason to give him false information . . ."); *State v. Gunwall*, 720 P.2d 808, 818 (Wash. 1986) (concluding that a declarant was credible because she made several statements against her penal interest to undercover officers whom she "had no reason to view . . . as anyone other than private citizens").

[42] *State v. Ward*, 2000 WI 3, ¶ 30, 231 Wis. 2d 723, 604 N.W.2d 517.

probability that a search of the specified premises would uncover evidence of wrongdoing.[43]

¶ 43. We conclude that the affidavit supporting the warrant to search the defendant's residence resting in part on the statements of Mr. X meets the totality of the circumstances test. The warrant-issuing commissioner had a substantial basis for concluding on the totality of the circumstances that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing. We therefore sustain the warrant-issuing commissioner's determination that probable cause existed for issuance of the warrant in the instant case.

¶ 44. Accordingly, we reverse the decision of the court of appeals reversing the circuit court's judgment of conviction and affirm the judgment of conviction.

*By the Court.*—The decision of the Court of Appeals is reversed.

¶ 45. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). The majority opinion affirms the conviction of Jaime Romero for the manufacture, distribution or delivery of more than 40 grams of cocaine, party to the crime, contrary to Wis. Stat. §§ 961.41(1m)(cm)4. and 939.05 (2005–06).[1] I agree with this conclusion.

¶ 46. I write separately for two reasons: (1) I conclude that the majority opinion could be read, mistakenly, as re-establishing a rigid two-prong test for evaluating the sufficiency of the allegations in a warrant affidavit, similar to the test employed in *Aguilar v. Texas,* 378 U.S. 108 (1964). The United States Supreme Court set aside *Aguilar* in *Illinois v. Gates,* 462 U.S. 213

---

[43] *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

[1] Majority op., ¶ 1.

(1983), when *Gates* established the totality of the circumstances approach for assessing the sufficiency of the information provided to obtain a search warrant.[2] (2) I conclude that the majority opinion could be read, mistakenly, as requiring a determination of the veracity, i.e., truthfulness, of a person who is not a known confidential informant, here Mr. X,[3] rather than assessing the reliability of Mr. X's statements through a common sense interpretation of the record before the magistrate. Accordingly, I respectfully concur.

## I. BACKGROUND

¶ 47. This case turns on whether the search warrant issued for Romero's home was based on sufficient evidence to show that probable cause existed that evidence of wrongdoing would be found therein. The evidentiary record to support the search warrant consists of the affidavit of Officer Miguel Correa. His affidavit incorporates hearsay from a known confidential informant, which includes hearsay statements from Mr. X, who was not a confidential informant.[4] Officer Correa also based his affidavit on observations of law

---

[2] It is the totality of the circumstances approach that we employ in ascertaining whether the guarantees of the Fourth Amendment of the United States Constitution and of Article I, Section 11 of the Wisconsin Constitution are observed when a search warrant is issued. *State v. Anderson,* 138 Wis. 2d 451, 469, 406 N.W.2d 398 (1987).

[3] The majority opinion employs this shorthand, so I do as well. Majority op., ¶ 9.

[4] It appears that Mr. X did not realize he was providing information to an informant for law enforcement when he spoke with the confidential informant.

enforcement that were present at the scene of what turned out to be a controlled buy of cocaine from Romero.

## II. DISCUSSION

A. Standard of Review

¶ 48. We accord great deference to a magistrate's decision to issue a search warrant. *Gates,* 462 U.S. at 236; *State v. Anderson,* 138 Wis. 2d 451, 469, 406 N.W.2d 398 (1987). In so doing, we review as a matter of law whether the magistrate had a substantial basis for concluding that a search of Romero's residence would uncover evidence of wrongdoing. *Anderson,* 138 Wis. 2d at 469.

B. Sufficiency of the Affidavit

1. General principles

¶ 49. An affidavit to support a search warrant may be based on hearsay. *Jones v. United States,* 362 U.S. 257, 270 (1960), *overruled on other grounds, U.S. v. Salvucci,* 448 U.S. 83 (1980). When reviewing the factual context to determine if probable cause to issue the search warrant existed, a court will sustain a magistrate's ruling "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates,* 462 U.S. at 236 (citing *Jones,* 362 U.S. at 271). "[T]he Fourth Amendment requires no more." *Id.*

¶ 50. In the 19 years immediately prior to *Gates,* the United States Supreme Court interpreted the Fourth Amendment's requirement of a "substantial

basis" to support probable cause to issue a search warrant under a "two-prong test," established in *Aguilar*, for occasions when the affiant did not have personal knowledge of the facts asserted in the affidavit. Both prongs of the *Aguilar* test had to be satisfied before probable cause to issue a warrant was established. *Aguilar*, 378 U.S. at 114–15. The two prongs of *Aguilar* are: (1) the basis of the information prong, which was explained as the factual circumstances that showed the basis for the knowledge of the informant; and (2) the veracity of the information prong, which was explained as a showing of the underlying circumstances that led the affiant to believe *either* that the "informant . . . was 'credible' *or* his information 'reliable.'" *Id.* at 114 (emphasis added).

¶ 51. The veracity of the information prong of the *Aguilar* test did not require two determinations—one for the credibility (sometimes referred to as the veracity) of the informant and one for the reliability of his information. Rather, it could be satisfied by determining "*either* the inherent credibility of the informant [i.e., his truthfulness,] *or* the reliability of his information on this particular occasion." 2 Wayne R. LaFave, *Search and Seizure* § 3.3(a), at 100 (4th ed. 2004) (emphasis in LaFave) (citing Charles E. Moylan, Jr., *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L. Rev. 741, 773 (1974)).

¶ 52. In *Gates,* the United States Supreme Court abandoned the formalistic two-prong test of *Aguilar* and determined that the "totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip." *Gates,* 462 U.S. at 230–31. The Supreme Court also explained that in addressing determinations of prob-

45

able cause, a court is dealing with probabilities, not absolutes. *Id.* at 231. The Supreme Court directed that during this process, "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" should be a court's guide. *Id.* The Court also cautioned that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232.

¶ 53. The Court in *Gates* explained that one of its reasons for abandoning the two-pronged test of *Aguilar* was because the two prongs had been analyzed independently, rather than as potential parts of the totality of the circumstances that a court should review in determining the reliability of the information upon which the affiant sought a search warrant. *Id.* at 233. The Court explained that while the credibility of the informant or the reliability of his information may be factors, as may the basis for the informant's knowledge, they were not tests that needed to be satisfied. *Id.* Accordingly, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, *or by some other indicia of reliability." Id.* (emphasis added).

¶ 54. We have employed the approach of *Gates,* as we must for the Fourth Amendment, but we also employ the *Gates* approach in ascertaining whether the guarantees of Article I, Section 11 of the Wisconsin Constitution have been preserved. *Anderson,* 138 Wis. 2d at 461–62, 468–69.

¶ 55. As the Supreme Court stepped away from the rigidity of the two-prong test of *Aguilar,* it provided suggestions that could assist a court in assessing the reliability of the information presented in an applica-

46

tion for a search warrant. The Supreme Court instructed that if the veracity, i.e., truthfulness, of an informant was known to law enforcement due to past interactions, that was significant evidence of the reliability of the information currently provided. *See Gates,* 462 U.S. at 243. However, if the veracity, i.e., truthfulness, of the informant was not known to law enforcement, then a court could examine the reliability of the information by corroborating it with other observations. *See id.* at 243–44. Or, a court could conclude that based on a common sense interpretation of surrounding facts, the information was reliable. *See id.* at 244. Or, a court could conclude that because the statement was an admission against penal interests, it was reliable. *See* LaFave, *Search and Seizure* § 3.3(c), at 131. The determination of the reliability of the information requires the court to focus on the nature of the information given and the circumstances under which it was provided. *Id.*

¶ 56. When the information relayed by a confidential informant to law enforcement contains factual assertions obtained from a person unknown to law enforcement, the confidential informant's veracity, i.e., truthfulness, is established by evidence that he has provided reliable information to law enforcement in the past. *State v. Reed,* 156 Wis. 2d 546, 555, 457 N.W.2d 494 (Ct. App. 1990); *see also State v. McAttee,* 2001 WI App 262, ¶ 11, 248 Wis. 2d 865, 637 N.W.2d 744 (concluding that in assessing whether there was probable cause to arrest based on information provided by a known confidential informant, the first question is whether law enforcement was entitled to rely on the confidential informant's statement). Furthermore, in the context of determining whether probable cause to arrest exists, the hearsay statements of one unknown to law enforcement, which are relayed by a known confi-

47

dential informant, may be relied upon "without independently determining the reliability of the informant's source or the source's information." *McAttee,* 248 Wis. 2d 865, ¶ 12. Law enforcement has "discretionary authority" to determine whether additional information or corroboration is needed before deciding whether to execute an arrest. *Id.* "Rigid legal rules [for determining probable cause] are ill-suited to an area of such diversity." *Gates,* 462 U.S. at 232.

### 2. Application of *Gates/Anderson*

¶ 57. The information that was supplied by the confidential informant in the case now before us was provided by one whom law enforcement knew to be truthful. The confidential informant had provided tips about drug trafficking on more than three occasions. All of those tips had proved reliable. Therefore, all of the facts asserted by the confidential informant based on his own knowledge pass muster under *Gates* and *Anderson* as reliable information. Our major focus, then, is on the statements attributed to Mr. X as repeated by the confidential informant.

¶ 58. The confidential informant said that he contacted Mr. X, who said he could get cocaine from an unnamed person. The confidential informant communicated this to law enforcement, who provided buy-money for a controlled buy of cocaine. The confidential informant said he picked up Mr. X, who told the confidential informant to drive to 205 East Montana Street. While driving, the confidential informant heard Mr. X call and order cocaine from someone named "Jaime." The confidential informant was observed by officers driving Mr. X to 205 East Montana Street. When the confidential informant and Mr. X reached 205 East Montana Street, the confidential informant said

that Mr. X asked for money, and he gave Mr. X a quantity of the buy-money law enforcement had provided. The confidential informant said that Mr. X told him to remain in the car, which he did.

¶ 59. Law enforcement observed Mr. X exit the confidential informant's automobile and an unnamed Hispanic male come out of the front door of 205 East Montana Street and motion Mr. X to go to the garage at the rear of the lot. Law enforcement also observed the unnamed Hispanic male walk toward the garage. Law enforcement observed the garage door that faced the alley open and Mr. X walk into the garage and a short time later, Mr. X exit the garage by the same door. Shortly thereafter, law enforcement observed the garage door close and the unnamed Hispanic male walk back to the front of 205 East Montana Street and enter the house.

¶ 60. The confidential informant said that when Mr. X re-entered his vehicle, Mr. X gave the confidential informant a clear sandwich bag that contained a white powdery substance, which the confidential informant subsequently gave to law enforcement. Law enforcement determined that the substance was cocaine. Law enforcement also corroborated through various official records that the defendant, Jaime Romero, resided at 205 East Montana Street; that Romero matched the physical description of the unidentified Hispanic male law enforcement observed at 205 East Montana Street; and that all of the events set out in the affidavit had occurred within the last 72 hours.

¶ 61. The facts supplied by Mr. X are: (1) the supplier of the cocaine was named "Jaime"; (2) Jaime had cocaine to sell at 205 East Montana Street; and (3) Jaime sold him the baggie of cocaine that Mr. X gave to the confidential informant. That a Jaime Romero was

a resident of 205 East Montana Street was corroborated by law enforcement through independent records. No one saw Romero inside of the garage, except Mr. X, and no one saw Romero sell Mr. X the cocaine that Mr. X gave to the confidential informant, except Mr. X. However, there are also the following law enforcement observations: (1) Romero motioning Mr. X to the garage; (2) Romero walking to the garage; (3) the opening of the garage door and Mr. X's entry into the garage and exit from it; and (4) Romero returning from the area of the garage to the front of the house. If these facts, together with the facts supplied by the confidential informant, are given a common sense interpretation, they are sufficient to conclude that Mr. X's assertion that Romero sold cocaine to him in the garage at the rear of 205 East Montana Street is reliable. Because this occurred within 72 hours of the petition for a search warrant, the magistrate had a substantial basis for concluding that evidence of wrongdoing would be found at 205 East Montana Street.

C. Majority Opinion

¶ 62. The term, "veracity," can be understood in more than one way. Veracity can be understood as referring to: (1) a person's general propensity for truthfulness; or (2) the reliability of the information a person provided on a particular occasion. *Aguilar*, 378 U.S. at 114. The majority opinion could be misread to require satisfaction of a two-part test that we do not intend to create. To explain further, the majority opinion could be misread as requiring both a finding of the veracity, i.e., truthfulness, of Mr. X and a finding that the information he provided on this occasion was reli-

able before the magistrate would have sufficient evidence to issue a search warrant.[5]

¶ 63. For example, the majority opinion states, "Facts set forth in the affidavit demonstrate Mr. X's veracity to a degree sufficient to show, considering the totality of the circumstances presented to the warrant-issuing commissioner, that the commissioner had a substantial basis for concluding that there was a fair probability that a search would uncover evidence of wrongdoing at the defendant's residence."[6] The majority opinion, repeatedly, does not distinguish between the "veracity of Mr. X" and the reliability of his information.[7] However, a determination of Mr. X's veracity, i.e., his truthfulness, was not necessary to the sufficiency of the affidavit that was presented to the magistrate. *Gates,* 462 U.S. at 244. Under the totality of the circumstances set out in *Gates,* a common sense approach is applied to determine the reliability of Mr. X's statements, which were repeated by a known confidential informant. *Id.* Under that approach, Mr. X's statements may be utilized by the magistrate who issued the warrant without an inquiry into Mr. X's general propensity for truthfulness. *See id.; see also McAttee,* 248 Wis. 2d 865, ¶ 12.

[5] *See, e.g.,* majority op., ¶¶ 32, 34–36.

[6] *Id.,* ¶ 34.

[7] *Id.,* ¶¶ 35–36. In ¶ 21 n.16 of the majority opinion, it is acknowledged that the veracity (truthfulness) of a declarant is sometimes confused with the reliability of the information provided. I agree that may have occurred, as precise terms have not been central to many opinions. However, when one has no basis for ascertaining whether the declarant is a truthful person, the distinction between the truthfulness of the declarant and the reliability of the information he has supplied will affect the analysis. That is why I bring this concern to the reader's attention.

¶ 64. It is important to keep in mind that a court's review of a magistrate's decision is confined to the record before the magistrate when he issued the search warrant. *Reed,* 156 Wis. 2d at 554. The veracity of a person, when understood as his truthfulness, may be established by evidence that in past dealings with law enforcement he has provided reliable information. *Id.* at 555. However, Mr. X had no prior dealings with law enforcement. Accordingly, based on the affidavit of Officer Correa, upon which the magistrate relied in deciding to issue the search warrant, it is not possible to determine Mr. X's veracity, i.e., his truthfulness. All that can be determined is that under the totality of the circumstances, the information Mr. X provided on that occasion probably was reliable.

¶ 65. Mr. X may be a person who generally is not truthful. The magistrate had no way of knowing, nor do we. Rather, the magistrate was to interpret the reliability of the information Mr. X provided as part of a common sense interpretation of the totality of the circumstances set forth in Officer Correa's affidavit. He did so.

## III. CONCLUSION

¶ 66. Because the majority opinion may be read, mistakenly, as requiring a finding of both the veracity, i.e., truthfulness, of Mr. X and the reliability of the information he provided before a search warrant may issue, I respectfully concur. I do so in order to set aside any potential misunderstanding that Mr. X's general propensity for truthfulness is necessary to the conclusions reached in the majority opinion, which I join.

¶ 67.　I am authorized to state that Justices AN-NETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this concurrence.