STATE of Wisconsin,
Plaintiff-Respondent,

v.

Guy S. HILLARY,
Defendant-Appellant.

Court of Appeals

*No. 2016AP1538–CR. Submitted on briefs June 28, 2017.
—Decided September 20, 2017.*

2017 WI App 67

(Also reported in 903 N.W.2d 311.)

267

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Aneeq Ahmad*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David H. Perlman*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Neubauer, C.J., Gundrum and Hagedorn, JJ.

¶ 1. GUNDRUM, J. Guy Hillary appeals from a judgment of conviction for manufacturing and possession with the intent to deliver THC. He argues the circuit court erred in denying his motion to suppress evidence procured pursuant to a subpoena and a search warrant he challenges. We conclude the court did not err in denying the motion.

## Background

¶ 2. Following up on an anonymous tip he received, Deputy Daniel Winger of the Walworth County Drug Enforcement Unit applied for a subpoena for electrical usage records related to Guy Hillary's residence and the two surrounding properties. In his affidavit in support of his application, Winger attested that he

> received anonymous information on June 13, 2014 that subject went to Guy S Hillary's residence to fix a vehicle when Hillary showed complainant a very large marijuana grow in a garage on Hillary's property.

271

> Complainant stated that there are several grow rooms with several large marijuana plants. Complainant stated that Hillary was bragging about how much money he makes.

Winger further attested that he checked in-house sheriff department records as well as Wisconsin Department of Transportation (DOT) records to confirm the correct address for Hillary's residence. Based upon Winger's affidavit and pursuant to Wis. Stat. § 968.135 (2015–16),[1] the Honorable James Carlson issued a subpoena based upon "probable cause" for the electrical usage records Winger requested.

¶ 3. After receiving the records, Winger applied for a search warrant for Hillary's residence. In his warrant affidavit, Winger provided electrical usage details from the records and stated that the records showed "a considerable amount more of electricity being used" at Hillary's residence than at the two surrounding residences. Winger also attested to speaking with an individual from Cannabis Enforcement and Suppression Effort (CEASE) who stated that the amount of electrical usage at Hillary's residence was an indicator of an indoor marijuana grow operation.

¶ 4. In the warrant affidavit, Winger described the location to be searched—Hillary's residence in the Town of Bloomfield in Walworth County—as well as items sought, which were items related to the manufacture, distribution or delivery of marijuana. In addi-

---

[1] Wisconsin Stat. § 968.135 provides in relevant part: "Upon the request of the attorney general or a district attorney and upon a showing of probable cause under [Wis. Stat. §] 968.12, a court shall issue a subpoena requiring the production of documents, as specified in [Wis. Stat. §] 968.13(2)." All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

272

tion to including the electrical usage and CEASE information in the affidavit, Winger stated he was a Walworth County Drug Enforcement Unit officer, had been an officer for twenty-five years, and had conducted numerous criminal investigations. Winger attested that he

> received anonymous information on June 13, 2014 that a subject went to Guy S Hillary's residence to fix a vehicle and Hillary proceeded to show the complainant a very large marijuana grow in a garage on Hillary's property. Complainant stated that there are several grow rooms within the garage containing several large marijuana plants. Complainant stated that Hillary was bragging about how much money he makes selling marijuana.

As with the subpoena application, Winger stated he checked the in-house records of the sheriff's department, as well as DOT records, to confirm the address for Hillary's residence. Winger also attested that he checked Walworth County Drug Enforcement Unit in-house records and that those records "showed that in November 2012, a Crime Stoppers tip came into the Town of Bloomfield Police Office stating that Guy Hillary resides at W1434 County Road B, in the Town of Bloomfield, Walworth County, Wisconsin, and has an ongoing marijuana grow at his residence." Winger further attested that he drove by this address, Hillary's residence. He attested to various characteristics of the home that he observed, including that Hillary's home was a "single family residence with an attached two car garage."

¶ 5. The Honorable Phillip A. Koss signed a warrant to search Hillary's residence. Evidence discovered during that search led to Hillary being charged with one felony count of manufacturing THC, one felony

273

count of possession with intent to deliver THC, and one misdemeanor count of possession of drug paraphernalia. Hillary moved to suppress the evidence on various grounds. The circuit court, the Honorable David M. Reddy presiding, denied the motions. Hillary pled to the two felony counts and the misdemeanor count was dismissed and read in. Following his sentencing, Hillary filed this appeal.

### *Discussion*

¶ 6. Hillary asserts that the evidence against him should have been suppressed because "the subpoena lacked probable cause to issue," and because of that, the electrical usage information procured via the subpoena was unlawfully obtained, i.e., "tainted," and should be "excised" from the search warrant affidavit. He further asserts that whether or not the electrical usage information is excised from the warrant affidavit, the affidavit lacked the probable cause necessary for its issuance. We affirm the circuit court's denial of Hillary's suppression motion because we conclude probable cause to issue the warrant existed even if the electrical usage information was tainted and should be excised from the warrant affidavit.[2] In so concluding, we assume, without deciding, that the electrical usage information was tainted.

■

¶ 7. "[W]here a search warrant [is] issued based on both tainted and untainted evidence, [a reviewing

---

[2] While the State indicates that it "cannot demonstrate probable cause for the search warrant without the electrical usage information," we disagree and are not bound by the State's position. *State v. Anderson*, 2014 WI 93, ¶ 19, 357 Wis. 2d 337, 851 N.W.2d 760 (2014) ("[W]e are not bound by a party's concession of law.").

court may] independently 'determine that the [untainted evidence is] sufficient to support a finding of probable cause to issue the search warrant.' " *State v. Herrmann*, 2000 WI App 38, ¶ 21, 233 Wis. 2d 135, 608 N.W.2d 406 (discussing our supreme court's holding in *State v. O'Brien*, 70 Wis. 2d 414, 234 N.W.2d 362 (1975)). And "where there is sufficient untainted evidence presented in the warrant affidavit to establish probable cause, the warrant is valid." *State v. St. Martin*, 2011 WI 44, ¶ 17, 334 Wis. 2d 290, 800 N.W.2d 858 (citation omitted). Thus, we will uphold the validity of the search warrant in this case if, after striking the electrical usage-related information, Winger's affidavit contains sufficient information to establish probable cause.

¶ 8. Whether undisputed facts satisfy a particular constitutional standard is a question of law we determine independently. *State v. Verhagen*, 2013 WI App 16, ¶ 17, 346 Wis. 2d 196, 827 N.W.2d 891. Probable cause to issue a warrant exists if the information set forth in support of the warrant establishes a "fair probability that a search of the specified premises would uncover evidence of wrongdoing." *State v. Romero*, 2009 WI 32, ¶ 4, 317 Wis. 2d 12, 765 N.W.2d 756. " '[T]he probable cause standard . . . is a practical, nontechnical conception' requiring a court to deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Id.*, ¶ 17 (citation omitted). It is a "flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *Herrmann*, 233 Wis. 2d 135, ¶ 22 (citation omitted). In deciding whether probable cause exists, a court "may make the usual inferences reasonable persons would

draw from the facts presented." *St. Martin*, 334 Wis. 2d 290, ¶ 16 (quoting *Bast v. State*, 87 Wis. 2d 689, 692–93, 275 N.W.2d 682 (1979)). In this case, the nonelectrical usage information in Winger's warrant affidavit established probable cause—a fair probability that a search of Hillary's residence would uncover evidence of an illegal marijuana-grow operation.

¶ 9. "In evaluating any evidence provided by 'persons supplying hearsay information,' we must evaluate the veracity of the hearsay declarant as well as the 'basis of the declarant's knowledge.' " *State v. Popp*, 2014 WI App 100, ¶ 28, 357 Wis. 2d 696, 855 N.W.2d 471 (quoting *Romero*, 317 Wis. 2d 12, ¶¶ 19–20). "The extent to which a search warrant's supporting affidavit must demonstrate the veracity and basis of knowledge of a declarant may vary depending on the circumstances specific to each case." *Romero*, 317 Wis. 2d 12, ¶ 23. In considering an informant's veracity, a court evaluates "either the credibility of the declarant or the reliability of the particular information furnished." *Id.*, ¶ 21. When an informant is entirely anonymous, as in this case, his or her credibility cannot be determined. The reliability of the information, however, nonetheless may be shown by the totality of the circumstances, including "the presence of detail in the information, and corroboration of details of an informant's tip by independent police work." *State v. Boggess*, 115 Wis. 2d 443, 455, 340 N.W.2d 516 (1983). In considering the basis of an informant's knowledge, a court considers "whether the declarant had a basis for his or her allegations that evidence of a crime would be found at a certain place." *Romero*, 317 Wis. 2d 12, ¶ 22. The basis of the informant's knowledge "is most directly shown by an expla-

nation of how the declarant came by his or her information." *Id.* The basis also may be shown indirectly. For example, "the wealth of detail" provided by the informant "may be sufficient to permit an inference that the basis of the declarant's knowledge is sound." *Id.* In the case now before us, because the nonelectrical usage-related information supporting probable cause for the warrant was procured from anonymous sources, we gain guidance from *Boggess* and *Popp.*

¶ 10. The *Boggess* court addressed the validity of a home search within the context of the emergency rule, assessing the value and reliability of information provided by an anonymous caller. *Boggess,* 115 Wis. 2d at 453.[3] The court noted that "[i]n determining the overall reliability of an anonymous informer's tip, the 'totality of circumstances' approach permits a deficiency in indicia demonstrating an informer's veracity to be compensated for by a strong showing concerning the informer's basis of knowledge, or by some other indicia of a reliability." *Id.* at 454. The court recognized that "the veracity of persons supplying anonymous information is, by hypothesis, largely unknown and unknowable," but added

---

[3] Even though *Boggess* dealt with the emergency rule and thus a different standard for entering a home than probable cause for a search warrant, it nonetheless provides helpful guidance, particularly because our supreme court stated in that case that the "totality of circumstances" approach for "determining the overall reliability of an anonymous informer's tip," should be analyzed in the same manner whether it is for the emergency rule or for "establishing traditional probable cause to issue a search warrant." *State v. Boggess,* 115 Wis. 2d 443, 453–55, 340 N.W.2d 516 (1983) (discussing the United States Supreme Court's decision in *Illinois v. Gates,* 462 U.S. 213 (1983)).

[t]hat does not necessarily mean, however, that the information the person provided must automatically be discredited. The information must be assessed under the totality of circumstances. Such circumstances may include the presence of detail in the information, and corroboration of details of an informant's tip by independent police work. Detail that an informer provides is evidence that the manner in which he obtained his information was reliable, and it enables the recipient of the information to conclude that he is relying on something more than casual rumor or an accusation based on a person's general reputation. In addition, corroboration of details contained in the information reduces the chances of a "reckless or prevaricating tale."

*Id.* at 455–56 (citations omitted).

¶ 11. The *Boggess* court noted that the caller in that case had provided "detailed information," specifically that the caller

identified two children by their last names (and at least one, if not both of the children, by the first name), gave Boggess' last name, and indicated by this that the children had different last names than Boggess. The caller did not simply make a generalized statement that the children had been abused but specifically indicated that L.S. had bruises and was limping. The caller also indicated that he knew the Boggesses fairly well, and that Calvin Boggess had a bad temper. The detail provided indicates that the caller was speaking from personal knowledge and not merely repeating an idle rumor. The caller's statements that he witnessed bruises on L.S. and that he knew the Boggesses fairly well also reflects his basis of knowledge, and indicates that he in all likelihood obtained his information from personal observation, not from gossip or rumor.

*Id.* at 456. The court added:

278

The fact that it was Boggess who answered the door of the residence [when an officer and social worker went there in response to the call] and that Boggess did not deny that children lived there but instead asked [the social worker] if she had a warrant, provided corroboration for at least portions of the information that the caller had provided to [the agency]. Although the corroborated facts were "innocent" details, and not details concerning whether abuse had occurred or was occurring, the United States Supreme Court has recognized that "[b]ecause an informant is right about some things, he is more probably right about other facts."

*Id.* at 456–57 (citation omitted). It was significant to the *Boggess* court that "[t]he information contained several details indicating that the caller had obtained the information firsthand, and [a social worker] and [officer] partially corroborated certain details provided in the information prior to their entry into the Boggess residence." *Id.* at 457. "Any deficiency in the veracity of the caller due to his anonymity was compensated for by both the specific detail contained in the information the caller provided and by the corroboration of portions of that information." *Id.*

¶ 12. In *Popp*, a probable-cause-for-a-search-warrant case similar to the case now before us, we also considered the value of an anonymous informant's tip but concluded that the information in the warrant affidavit did not provide probable cause. The affidavit explained that an anonymous caller reported that a man in a full body suit was removing large Tupperware containers with mushrooms from the trailer west of Trailer 23 at an identified trailer park. *Popp*, 357 Wis. 2d 696, ¶¶ 3, 29. The caller did not identify himself except to say he had an outstanding criminal warrant and "hoped to use the information about the

drug case 'in consideration' for leniency in his own case." *Id.* The caller stated he had been in the trailer west of Trailer 23 "millions" of times and had observed a mushroom grow operation there. *Id.*, ¶¶ 9, 29. The affidavit also provided that police officers responding to the residence observed that the windows were covered and when they spoke with one of the defendants outside the residence, he appeared nervous and agitated and refused to give police consent to search the trailer. *Id.*, ¶¶ 6, 7, 29. The affidavit further stated that police had reviewed department records for the trailer and learned that there had been a call two to three years earlier indicating "a possible meth lab" at the trailer involving the defendants; however, when police conducted a consent search at that time they found no evidence of wrongdoing. *Id.*, ¶¶ 5, 29.[4]

¶ 13. In concluding that the affidavit did not provide probable cause for a warrant to search the residence, we noted that the anonymous caller provided no details police could corroborate "beyond the fact that Trailer 22 was west of Trailer 23." *Id.*, ¶ 30. We also noted that "[w]hile police did in fact discover that Trailer 22 belonged to [the defendants] and that the trailer had been the target of a previous, bogus drug investigation, none of those particular details were provided by the anonymous caller." *Id.* We additionally observed that when police arrived at the trailer following the informant's call, they saw no

---

[4] The affidavit in *State v. Popp*, 2014 WI App 100, ¶ 28, 357 Wis. 2d 696, 855 N.W.2d 471, provided significant additional information relevant to the probable cause inquiry; however, we excised much of the information because it was procured through an unlawful search of the trailer. *Id.*, ¶¶ 26, 27, 29. The information we discuss herein is what remained after that tainted information was excised from the affidavit.

evidence of anyone in a body suit, Tupperware containers, or "any other information that would have corroborated the caller's story." *Id*. "In sum," we concluded, "there was no way to infer that the anonymous caller was 'probably right about' the facts alleged." *Id*. (citation omitted).

¶ 14. We also pointed out that "the evidence for the basis of the caller's knowledge was extremely weak." *Id*., ¶ 31. Specifically, we questioned the informant's "empty hyperbole" that he had been in the trailer "millions" of times, and found concerning the fact that the informant "did not say how he knew the defendants, his relationship to them, or the circumstances that brought him to the trailer in the past." *Id*. We ultimately found probable cause lacking because

> given that we cannot verify the veracity and basis of knowledge for the facts derived from the anonymous caller, we are left with little more than the observations that the trailer's windows were covered and [the defendant] was visibly nervous when being questioned [by the police] about alleged illegal activity. This is not enough to support a search warrant.

*Id*., ¶ 32.

¶ 15. In the case now before us, Winger's warrant affidavit stated that he received

> anonymous information on June 13, 2014 that a subject went to Guy S Hillary's residence to fix a vehicle and Hillary proceeded to show the complainant a very large marijuana grow in a garage on Hillary's property. Complainant stated that there are several grow rooms within the garage containing several large marijuana plants. Complainant stated that Hillary was bragging about how much money he makes selling marijuana.

281

The details from the tipster give the tip the "ring of truth." Similar to *Boggess*, here the tipster did not "simply make a generalized statement" that Hillary possessed in his house or was dealing illegal drugs—or even marijuana specifically. Rather, the tipster more specifically detailed that Hillary was running a marijuana grow operation out of his residence, including that Hillary had "several grow rooms within the garage containing several large marijuana plants." The tipster stated that it was Hillary himself who showed the tipster the grow operation, and that Hillary bragged about how much money he makes selling marijuana. Further, the tipster indicated he or she became aware of this information through personal observation when he or she was at the residence to fix a vehicle, an out-of-the-ordinary but certainly plausible basis for the tipster's knowledge. One would not expect a tipster to provide such detail unless it had a basis in fact. *See Romero*, 317 Wis. 2d 12, ¶ 22. As our supreme court stated in *Romero*:

> To demonstrate the basis of a declarant's knowledge, facts must be revealed to the warrant-issuing officer to permit the officer to reach a judgment whether the declarant had a basis for his or her allegations that evidence of a crime would be found at a certain place. The basis of a declarant's knowledge is most directly shown by an explanation of how the declarant came by his or her information. The basis of a declarant's knowledge also may be shown indirectly. The wealth of detail communicated by a declarant, for example, may be sufficient to permit an inference that the basis of the declarant's knowledge is sound.

*Id.* Furthermore, we note that details of the tip are internally consistent, in that one would expect someone who is fixing a car to do so in or around a garage,

the location where the tipster represented he or she observed the marijuana grow operation.

¶ 16. Thus, the tipster provided specific and detailed information that explained that he or she personally observed the grow operation, the nature of the operation observed, and how/why it was that the tipster was in a position to learn this information. This was detail that "is evidence that the manner in which [the tipster] obtained [the] information was reliable, and it enables the recipient of the information to conclude that he [or she] is relying on something more than casual rumor or an accusation based on a person's general reputation." *See Boggess*, 115 Wis. 2d at 455; *see also United States v. Jackson*, 898 F.2d 79, 80–81 (8th Cir. 1990) (stating that the anonymous tipster's information "identif[ying] the source of his tip; . . . the height of the marijuana plants, their location [defendant's garage] and the location of sacks of marijuana [defendant's bedroom], and the name of the occupant [defendant Jackson]" had "the richness and detail of a first hand observation").

¶ 17. Significantly, this June 2014 anonymous tip, did not stand alone in Winger's affidavit but was supported by a previous anonymous tip. Winger averred that he checked drug enforcement unit records and those records showed that "in November 2012, a Crime Stoppers tip came into the Town of Bloomfield Police Office stating that Guy Hillary resides at W1434 County Road B, in the Town of Bloomfield, Walworth County, Wisconsin, and has an ongoing marijuana grow at his residence." So, a year and a half prior to the June 2014 tip about Hillary running a marijuana grow operation at his residence, there was another tip providing that same information to the local police department where Hillary resides.

¶ 18. Importantly, the November 2012 tip, like the June 2014 tip, was not simply "a generalized statement" that Hillary had illegal drugs, or even more specifically marijuana, in his house or was dealing illegal drugs or marijuana out of his house, but that Hillary "has an ongoing marijuana grow" operation going on in his residence—the exact same type of activity related to the same illegal drug as the June 2014 tipster detailed. The November 2012 tip provides significant support for the June 2014 tip that Hillary was at that time running a marijuana grow operation at his residence. It also supports the November 2014 tipster's information that Hillary was "bragging about how much money he makes selling marijuana," in that the year and a half between the first tip and the second would have provided ample opportunity for Hillary to make "much money" selling marijuana.[5] With two tips

_____

[5] Hillary asserts that the information from the November 2012 tip "must be excised" from the search warrant affidavit because "information obtained from an illegal search must be excised." This makes no sense in that there is no suggestion of any kind that the November 2012 tip came to the police via an illegal search or in any other questionable manner.

Hillary also complains that the November 2012 tip is too stale to establish probable cause. We need not address this complaint because he fails to develop an argument in support of it. *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶ 180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."). We note, however, the following statement we made in *State v. Jones*, 2002 WI App 196, 257 Wis. 2d 319, 651 N.W.2d 305:

> There is not . . . any dispositive significance in the mere fact that some information offered to demonstrate probable cause may be called stale, in the sense that it concerns events that occurred well before the date of the application for the warrant. If such past fact contributes to an inference that probable cause exists at the time of the application, its age is no taint.

a year and a half apart reporting that the same person—Guy Hillary—was running a marijuana grow operation out of his residence, a reasonable court would reasonably conclude that this allegation was probably true. Whether the same tipster provided both tips (and for some unknown reason waited a year and a half to provide the second tip) or a different tipster provided each tip,[6] a reasonable court reviewing Wing-

*Id.*, ¶ 20 (quoting *State v. Moley*, 171 Wis. 2d 207, 213, 490 N.W.2d 764 (Ct. App. 1992)); *see also State v. Loranger*, 2002 WI App 5, ¶ 24, 250 Wis. 2d 198, 640 N.W.2d 555 (2001) ("[W]hether evidence is 'stale' is not determined 'by counting the time between the occurrence of the facts relied upon and the issuance of the warrant.' Rather, 'timeliness depends on the nature of the underlying circumstances.' Because marijuana growing is of a continuous nature, greater lapses of time are justified." (citations omitted)). This quote from *Jones* is perfectly applicable to this case.

[6] While it is possible the June 2014 tipster is the same person as the November 2012 tipster, it does not seem particularly likely that this is the case. To begin, the information provided in relation to the June 2014 tipster provides no indication that that tipster had previously made a tip to law enforcement about Hillary's marijuana grow operation. Moreover, the reason provided for why the June 2014 tipster was at Hillary's residence was to fix a vehicle. The November 2012 tip does not state that the tipster was even personally at Hillary's residence much less that he/she was there for a reason similar to fixing a vehicle. Furthermore, if the same person provided each tip, one must wonder why he/she would wait a year and a half to contact law enforcement a second time about Hillary's grow operation. If the tipster had a motive to cause law-enforcement-type trouble for Hillary even if in fact there was no illegal marijuana grow operation at the property, why wait a year and a half to contact the police a second time? While it seems much more likely that these were two separate tipsters, even if they were the same person, the fact that the tipster contacted the police twice—a year and a half apart—provides

er's affidavit would not conclude the two tips were "just a coincidence." Together, these tips provided strong reason for law enforcement, and a court, to believe there was indeed a marijuana-growing operation taking place at Hillary's residence.

¶ 19. We also note that the November 2012 tipster reported that Hillary resided at, and was running his marijuana grow operation out of, "W1434 County Road B, in the Town of Bloomfield, Walworth County, Wisconsin." This detail was corroborated through Winger's check (in 2014) of sheriff department and DOT records, which indicated that Hillary did indeed reside at this address. Winger also stated in his affidavit that he personally drove by Hillary's residence (on July 3, 2014), and did observe it to be a "single family residence with an attached two car garage," corroborating the June 2014 tipster's detail that Hillary had a garage at his residence. Though we do not consider corroboration of these "innocent" details to have great weight, it does add some weight because, as the *Boggess* court stated, "the United States Supreme Court has recognized that '[b]ecause an informant is right about some things, he is more probably right about other facts.' "[7] *Boggess*, 115 Wis. 2d at 456–57 (citation omitted); *see also State v. Robinson*, 2010 WI 80, ¶ 29, 327 Wis. 2d 302, 786 N.W.2d 463 (determin-

---

sufficient reason for the judge to believe there really was a marijuana grow operation taking place at Hillary's residence.

[7] If, for example, Winger had instead observed Hillary's residence to be a type that had no garage or only a common garage (like at an apartment complex), such a fact would significantly undermine the reliability of the tipster's information that Hillary had shown the tipster "a very large marijuana grow in a garage on Hillary's property" and that "there are several grow rooms within the garage containing several large marijuana plants."

286

ing it significant to finding probable cause that police corroborated an anonymous citizen informant's "innocent" details of Robinson's name, address, and cell phone number because the corroboration of these details "lent reliability to the informant's allegation that Robinson was selling marijuana out of his apartment"). As in *Boggess*, in the case now before us

> [t]he information contained several details indicating the caller had obtained the information firsthand, and [Winger] partially corroborated certain details provided in the information prior to [applying for the search warrant]. Any deficiency in the veracity of the [tipster] due to his anonymity was compensated for by both the specific detail contained in the information the [tipster] provided and by the corroboration of portions of that information.

*See Boggess*, 115 Wis. 2d at 457.

¶ 20. We observe that the information before the warrant-issuing court in this case provides a stronger basis for a finding of probable cause than the information in support of the warrant in *Popp*. Unlike in *Popp*, the warrant affidavit in this case provided no information suggesting the tipsters had warrants for their arrest or were looking to get something from law enforcement in return for their respective tips; nor did the affidavit indicate either tipster had a motive to falsely inculpate Hillary. *See Romero*, 317 Wis. 2d 12, ¶¶ 37–38 (noting in consideration of "Mr. X's" "credibility and thus veracity," that "the facts asserted in [the officer's] affidavit do not suggest that Mr. X had any motive to falsely inculpate the defendant" or "would get anything from law enforcement in return" for his information). Furthermore, here, police were able to corroborate more information of the tipsters than the police in *Popp*—here, police corroborated the

287

address provided by the November 2012 tipster and that Hillary resided at that address and corroborated that Hillary's residence in fact had a garage as indicated by the June 2014 tipster. And unlike the prior false report of "a possible meth lab" in the defendant's trailer in *Popp*, here, the November 2012 tipster's tip of a marijuana grow operation at Hillary's residence was never found to be untrue. Thus, in *Popp* there had already been one clearly "bogus" call implicating the defendants in an illegal drug operation, providing some additional reason to question whether perhaps the most recent call in that case was also baseless. Additionally, in this case, the June 2014 tipster's detail that he/she observed the marijuana grow operation at Hillary's residence while there to "fix a vehicle" has a ring of truthfulness greater than the Popp informant's "empty hyperbole" that he had been to the trailer "millions" of times.

¶ 21. Considering the totality of the circumstances, the nonelectrical usage-related information in Winger's affidavit alone established a "fair probability" that a search of Hillary's residence would uncover evidence of an illegal marijuana grow operation. *Romero*, 317 Wis. 2d 12, ¶ 4. The warrant was supported by probable cause and thus valid.

*By the Court.*—Judgment affirmed.