GUNDRUM, J.[1]
¶ 1 The State of Wisconsin appeals from the circuit court's grant of Emily Mays' motion to suppress evidence. Following an officer's investigatory stop, Mays was arrested and subsequently charged with operating a motor vehicle while intoxicated and operating with a prohibited alcohol concentration, both as second offenses and with a minor child in the vehicle, and operating while revoked. We conclude the court erred in determining that the officer's suspicion that Mays was operating her vehicle while intoxicated and with her children in the vehicle was not reasonable and thus erred in granting Mays' suppression motion. We reverse and remand for further proceedings.
Background
¶ 2 The arresting officer was the only witness to testify at the evidentiary hearing on Mays' suppression motion. His relevant testimony is as follows.
¶ 3 Around 2:53 a.m. on July 19, 2017, the officer observed a "reckless driver call" near his location "pop up" on his squad computer. The note said there was "a possible intoxicated driver." When the officer told dispatch he would be en route to the call, dispatch further informed him it had received a call from a woman ("the 911 caller") who explained she had received a call from an employee of hers, a teenage girl named Stephanie, and the girl informed the 911 caller that her mother, who the 911 caller reported as being named "Emily," was driving drunk with the girl and her siblings in the vehicle. The 911 caller indicated they were in a "blue truck" "in the area of Frank School." Shortly thereafter, the officer located a vehicle matching the description in the area of Frank School and followed it for approximately ten blocks.
¶ 4 The officer observed the vehicle "slowly kind of ... g[et] close" to the center line and then switch lanes without using a directional signal. The officer stopped the vehicle and learned there were four children in it and Mays was driving. Following additional investigation, the officer arrested Mays for operating while intoxicated, second offense, with a minor child in the vehicle. After she was criminally charged with the same offense as well as operating with a prohibited alcohol concentration, second offense, with a minor child in the vehicle, and operating while revoked, Mays moved to suppress the evidence, challenging the constitutionality of the stop.
¶ 5 At the suppression hearing, a videotape from the officer's squad car was played, as were audiotapes from the 911 caller's call to dispatch and dispatch's subsequent call to the officer. In granting the motion to suppress, the court found there was a 911 call "indicating that a particular individual may be in a vehicle being driven by the mom who may be intoxicated. Dispatch to the police officer just basically indicates [911] caller says daughter says mom driving around in blue truck intoxicated with them in the car, et cetera, certain location." The court found that when the officer followed Mays' vehicle for numerous blocks, Mays "didn't commit any traffic violations" or driving movements of significant concern but did "ma[k]e a slight deviation towards the center line before staying in the left lane and then turned from the left lane into the right lane without a traffic signal." The court concluded the evidence was insufficient to justify the officer's investigatory stop and granted Mays' suppression motion. The State appeals.
Discussion
¶ 6 Reviewing a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the court's factual findings. State v. Smiter , 2011 WI App 15, ¶ 9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010). However, our review of whether the facts satisfy the required constitutional standard-here, reasonable suspicion-is de novo. State v. Powers , 2004 WI App 143, ¶ 6, 275 Wis. 2d 456, 685 N.W.2d 869.
¶ 7 In granting the suppression motion, the circuit court focused largely on the fact that the officer's testimony and the squad car video indicated that during the approximately ten blocks the officer followed Mays' vehicle, he did not observe any traffic violations or driving of sufficient concern to give him a reasonable suspicion Mays was intoxicated. We, however, focus more heavily on the information the police had received from the 911 caller.
¶ 8 "When reviewing a set of facts to determine whether those facts could give rise to a reasonable suspicion," we should
apply a commonsense approach to strike a balance between the interests of the individual being stopped to be free from unnecessary or unduly intrusive searches and seizures, and the interests of the State to effectively prevent, detect, and investigate crimes. In every case, a reviewing court must undertake an independent objective analysis of the facts surrounding the particular search or seizure and determine whether the government's need to conduct the search or seizure outweighs the searched or seized individual's interests in being secure from such police intrusion.
State v. Rutzinski , 2001 WI 22, ¶ 15, 241 Wis. 2d 729, 623 N.W.2d 516 (citations omitted).
¶ 9 Reasonable suspicion necessary for an investigative stop requires "more than an officer's inchoate and unparticularized suspicion or 'hunch.' " State v. Post , 2007 WI 60, ¶ 10, 301 Wis. 2d 1, 733 N.W.2d 634 (citation omitted). "Rather, the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop." Id . (citations omitted). The "crucial question" in determining whether the stop was reasonable is "whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." Id ., ¶ 13. In determining whether a stop was reasonable, we consider "the totality of the facts and circumstances." Id .
¶ 10 In this case, the information of significance the police possessed prior to stopping Mays came largely from the 911 caller. "[B]efore an informant's tip can give rise to grounds for an investigative stop, the police must consider its reliability and content." See Rutzinski , 241 Wis. 2d 729, ¶ 17. In Rutzinski , our supreme court expressed that "[t]ips should exhibit reasonable indicia of reliability ." Id ., ¶ 18 (emphasis added).
In assessing the reliability of a tip, due weight must be given to: (1) the informant's veracity; and (2) the informant's basis of knowledge. These considerations should be viewed in light of the "totality of the circumstances," and not as discrete elements of a more rigid test: "[A] deficiency in one [consideration] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."
Id. (alterations in original; citations omitted).
¶ 11 In this case, there were two "tipsters": the teenage girl who purportedly informed the 911 caller of her predicament and the 911 caller who informed the police of the same. In such a case, consideration must be given to the reliability of both the girl's report to the 911 caller and the 911 caller's report to the police. See State v. Romero , 2009 WI 32, ¶ 29, 317 Wis. 2d 12, 765 N.W.2d 756 (where one informant informs law enforcement of what someone else has told him/her, the reliability of each tip is relevant). Thus, we consider whether the report of both the teenage girl and the 911 caller exhibited "reasonable indicia of reliability." See Rutzinski , 241 Wis. 2d 729, ¶ 18.
¶ 12 In considering an informant's veracity, a court evaluates "either the credibility of the declarant or the reliability of the particular information furnished." Romero , 317 Wis. 2d 12, ¶ 21. "Even if a declarant's credibility cannot be established, the facts still may permit [a reasonable police officer] to infer that the declarant has supplied reliable information on a particular occasion." See id . The reliability of the information may be shown by the totality of the circumstances, including "the presence of detail in the information, and corroboration of details of an informant's tip by independent police work." State v. Hillary , 2017 WI App 67, ¶ 9, 378 Wis. 2d 267, 903 N.W.2d 311. "In considering the basis of an informant's knowledge," a reasonable police officer should consider "whether the declarant had a basis for his or her allegations that evidence of a crime would be found at a certain place." Id . "The basis of the informant's knowledge 'is most directly shown by an explanation of how the declarant came by his or her information.' " Id . (citation omitted). The basis also may be shown indirectly. For example, "the wealth of detail" provided by the informant "may be sufficient to permit an inference that the basis of the declarant's knowledge is sound." Id . (citation omitted).
¶ 13 In this case, the circuit court summarized the 911 call as a call "indicating that a particular individual may be in a vehicle being driven by the mom who may be intoxicated." The call provided most of the relevant information the police possessed prior to making the investigative stop and was played for the court during the suppression hearing, so we will consider it as well. Under the "collective knowledge" doctrine, information within the knowledge of the police department, such as all the details reported directly to dispatch by the 911 caller here, is considered to be within the knowledge of the police and thus imputed to the officer on the scene for purposes of determining whether the investigatory stop of Mays was constitutionally justified. See State v. Rissley , 2012 WI App 112, ¶ 19, 344 Wis. 2d 422, 824 N.W.2d 853 ("[U]nder the collective knowledge doctrine, '[t]he police force is considered as a unit and where there is police-channel communication to the arresting officer and he acts in good faith thereon, the arrest is based on probable cause when such facts exist within the police department.' The same reasoning applies to cases involving investigatory stops based on reasonable suspicion." (citations omitted) ).
¶ 14 From the exchange between dispatch and the 911 caller, a reasonable police officer would conclude that at 2:51 a.m. the 911 caller called 911 and provided dispatch the following relevant information:
-the 911 caller was "the employer of a teenage girl";
-the 911 caller "got woken up" by the girl, who was crying;
-the girl's mother had the girl and her siblings "out driving drunk";
-they were in a "blue truck" by "Frank School,"[2] which was "by a building they call Bluejack's I guess";
-the 911 caller did not want to speak with an officer because she did not want to be involved because the daughter worked for her;
-when dispatch asked for the girl's name, the 911 caller responded that her name was "Stephanie" and then stated, "but please don't report that to anyone";
-when asked what the name of the girl's mother was, the 911 caller responded "Emily" but could not recall the last name;
-the 911 caller did not want "them" to know that the 911 caller was calling; and
-the 911 caller states "do not send Officer Willie" because "he knows the mom and kind of like shrugs things off."
¶ 15 As for the 911 caller's individual basis of knowledge, the 911 caller indicated to dispatch that she received her information directly from the teenage girl, who was her employee, who "woke[ ] [the 911 caller] up." A reasonable police officer would likely infer that as the professed employer of the girl, the 911 caller would have had sufficient familiarity with the girl to determine if her report to the 911 caller was likely truthful, thus prompting the 911 caller to call the police about the situation. The 911 caller further indicated that the girl's basis of knowledge came from her own contemporaneous experience as she purportedly told the 911 caller that her mother was at that time driving drunk with her and her siblings, and thus the girl "necessarily claimed eyewitness knowledge of the alleged dangerous driving." See Navarette v. California , 572 U.S. 393, 399 (2014). "That basis of knowledge lends significant support to the tip's reliability." Id. The officer here "reasonably could have inferred from this information that the [girl] had a reliable basis of knowledge." See Rutzinski , 241 Wis. 2d 729, ¶ 33 (Because "[t]he informant explained that he or she was making personal observations of Rutzinski's contemporaneous actions," the officer "reasonably could have inferred from this information that the informant had a reliable basis of knowledge.").
¶ 16 Mays points out that the 911 caller did not provide any details as to how the teenage girl might have known the mother was drunk. Mays asks: "Did the teenager observe her mother drinking alcohol? Did the teenager observe her mother engage in erratic or dangerous driving?" Had the report of drunk driving to the 911 caller come from a six year old, these questions might carry more weight. For a teenager who is old enough to be employed, however, a reasonable officer could assume the girl had sufficient worldly experience and a sufficient basis of concern for her mother's immediate condition that she would wake up her employer at 2:50 a.m. to report that her own mother was driving drunk with her and her siblings in the vehicle. Furthermore, "in Wisconsin, a layperson can give an opinion that he or she believes another person is intoxicated." See Powers , 275 Wis. 2d 456, ¶ 13 (delineating that "[o]ther jurisdictions have upheld traffic stops based, in part, on a layperson's assessment that another person was intoxicated").
¶ 17 As for veracity, there is no indication the police knew the identity of either the 911 caller or the teenage girl at the time the 911 caller made her report to dispatch,[3] thus there is no reason to believe the police would have known at the time whether or not they were credible informants. Under the totality of circumstances, however, a reasonable police officer could infer that the 911 caller and the teenage girl had supplied sufficiently reliable information. See id. , ¶ 15, (under the totality of the circumstances, information should be "sufficiently reliable" to provide the police with reasonable suspicion of criminal activity); see also Rutzinski , 241 Wis. 2d 729, ¶ 20.
¶ 18 The 911 caller reported that the girl, her employee, had just woken her up. Thus, there is no reason to believe the 911 caller was personally observing at that time a blue truck with her teenage employee and siblings in it being driven by their mother. The reasonable inference would be that the information the 911 caller was relaying to dispatch about the girl's mother having the girl and her siblings "out driving drunk" came directly from the girl, who called the 911 caller while "crying." The fact that the 911 caller reported that the "blue truck" was in the area of Frank School and shortly thereafter the officer located such a vehicle in the area of Frank School, with no other vehicles in the area at the time,[4] amounted to corroboration of the report and also indicates the report from the girl to the 911 caller and the report from the 911 caller to dispatch were contemporaneous with the events being reported. Such corroboration bolstered the reliability of the report because, as our supreme court has stated, if "an informant is right about some things, he is more probably right about other facts." See State v. Boggess , 115 Wis. 2d 443, 456-57, 340 N.W.2d 516 (1983) (citation omitted); see also State v. Grullon , No. 2016AP2404, unpublished slip op. ¶ 15 (WI App Nov. 28, 2017) (concluding that it "bolster[ed] the reliability of the [911] tip" that the officer "located a man riding a 'Harley-type' motorcycle-on a night with limited traffic-on a street close by, and a short time after the 911 call was made"); State v. Robinson , 2010 WI 80, ¶ 29, 327 Wis. 2d 302, 786 N.W.2d 463 (determining it significant to finding probable cause that police corroborated an anonymous citizen informant's "innocent" details of Robinson's name, address, and cell phone number because the corroboration of these details "lent reliability to the informant's allegation that Robinson was selling marijuana out of his apartment").[5] Furthermore, "a citizen's contemporaneous report of possible unlawful activity 'has long been treated as especially reliable.' " State v. Ewers , No. 2016AP1671, unpublished slip op. ¶ 17 (WI App Aug. 22, 2017) (citing Navarette , 572 U.S. at 399 ); see also Grullon , No. 2016AP2404, ¶ 15.
¶ 19 Furthermore, the circumstances suggest it was unlikely the girl would have been fabricating the report to the 911 caller. To begin, it would indeed be odd for any employee to wake her employer at 2:50 a.m. to make such a report-about her own mother driving drunk with her and her siblings in the vehicle no less-if there was not a substantial basis for immediate concern. Additionally, the report from the 911 caller to dispatch appears to indicate that the girl was not calling the 911 caller for the purpose of having the 911 caller then contact the police, as the 911 caller told dispatch that the 911 caller did not want "them" to know that the 911 caller had contacted the police. Also, we are unable to discern from the record any reason a reasonable officer would believe the girl had a motive to falsely inculpate her mother to her employer, and Mays has suggested no reason. Romero , 317 Wis. 2d 12, ¶¶ 20, 37-38 (considering it as support for a tipster's "credibility and thus veracity" that the tipster had no apparent motive to make a false report against the defendant).
¶ 20 As to the 911 caller, she called the police using the 911 system. "Calls to the 911 emergency system are an indicator of the caller's veracity, as the system has some features that allow for identifying and tracing callers that would make 'a false tipster ... think twice before using such a system.' " Ewers , No. 2016AP1671, ¶ 15 (quoting Navarette , 572 U.S. at 401 ). Moreover, a caller to the 911 system who makes a false report is subject to criminal prosecution. See WIS. STAT. § 256.35(10) ; see also Rutzinski , 241 Wis. 2d 729, ¶ 32 n.8. While the 911 caller reporting on Mays was not to be considered "per se reliable" just because she called the 911 system, her contact via this system was nonetheless a relevant consideration for determining if the information being provided was reliable. Navarette , 572 U.S. at 401. The police here could reasonably have concluded that the 911 caller knew her identity might well be discovered by law enforcement and thus that she "potentially could be arrested if the tip proved to be fabricated."[6] See Rutzinski , 241 Wis. 2d 729, ¶ 32. This too added to the reliability of the information the 911 caller relayed to the police. See id . (recognizing that a tip from an unidentified informant who "exposed him- or herself to being identified" is generally reliable); see also State v. Williams , 2001 WI 21, ¶ 35, 241 Wis. 2d 631, 623 N.W.2d 106 ("Risking one's identification intimates that, more likely than not, the informant is a genuinely concerned citizen as opposed to a fallacious prankster.").
¶ 21 Furthermore, the report to dispatch had the "ring of truth" to it. As indicated, it would indeed be unusual for a teenage girl to call and wake her employer at 2:50 a.m. to report that her own mother was driving drunk with her and her siblings in the vehicle unless it had a basis in fact. The specific and detailed information of the vehicle being in the area of "Frank School," which the 911 caller reported as being "by a building they call Bluejack's I guess" simply does not sound like a story fabricated by either the girl or 911 caller. Details such as this and others the 911 caller reported enabled dispatch to conclude that she was "relying on something more than casual rumor or an accusation based on a person's general reputation." See Hillary , 378 Wis. 2d 267, ¶ 16 (citations omitted). This information had the "richness and detail of a first hand observation." See United States v. Jackson , 898 F.2d 79, 80-81 (8th Cir. 1990).
¶ 22 Moreover, the 911 call came in at approximately 2:50 a.m., a time of day that more greatly lends to suspicion that the operator of the blue truck, Mays, may have been drinking intoxicants to excess. See Post , 301 Wis. 2d 1, ¶ 36 (time of night "does lend some further credence" to an officer's suspicion of intoxicated driving); see also State v. Lange , 2009 WI 49, ¶ 32, 317 Wis. 2d 383, 766 N.W.2d 551 (concluding the time of day is relevant for an OWI probable cause (or reasonable suspicion) determination).
¶ 23 We conclude that a reasonable police officer would believe that the information this 911 caller relayed to dispatch was sufficiently reliable.
¶ 24 We further note that in Rutzinski , our supreme court stated that "where the allegations in the tip suggest an imminent threat to the public safety or other exigency that warrants immediate police investigation," the Fourth Amendment
do[es] not require the police to idly stand by in hopes that their observations reveal suspicious behavior before the imminent threat comes to its fruition. Rather, it may be reasonable for an officer in such a situation to conclude that the potential for danger caused by a delay in immediate action justifies stopping the suspect without any further observation. Thus, exigency can in some circumstances supplement the reliability of an informant's tip in order to form the basis for an investigative stop. Cf. City of Indianapolis v. Edmond , [531 U.S. 32, 42-43] (2000) (noting that exigencies of some scenarios likely would outweigh the individual's right to be free from an investigative traffic stop).
Rutzinski , 241 Wis. 2d 729, ¶ 26. The Rutzinski court held that because "of the potential for imminent danger that drunk drivers present," an informant's allegations suggesting a motorist may be operating while intoxicated "supplement[ ] the reliability of the tip." Id. , ¶ 35.
¶ 25 In this case, the potential danger identified by the 911 caller's report was even greater than in a "normal" drunk driving case because here the 911 caller reported that there were multiple children of Mays' in the vehicle. Thus, even if Mays' driving resulted in Mays merely driving into a tree or light pole, as opposed to a vehicle driven by another person, the likelihood that, in addition to Mays, numerous innocent persons could be injured or killed was even greater.
¶ 26 Under the totality of the circumstances, the 911 caller's report to dispatch was sufficiently reliable to provide the officer with reasonable suspicion that Mays was operating her vehicle while intoxicated with several children in the vehicle. Thus, the officer's stop was constitutional on that basis alone. However, when combined with the potential imminent danger the situation posed to Mays' children purportedly in the vehicle, in addition to other members of the public and Mays herself, "the minimal intrusion that the stop would have presented" had Mays indeed not appeared intoxicated when the officer approached her window upon a traffic stop was "substantially outweighed" by the reasonable grounds for conducting the stop. See id. , ¶ 37.
Conclusion
¶ 27 The officer here did not just stop Mays to investigate a "hunch" based upon slight deviation toward the center line or changing lanes without using a directional signal. Rather, the stop here was supported by a sufficiently reliable 911 report of an immediately dangerous situation-a woman, "Emily," driving a "blue truck" at approximately 2:50 a.m. in the area of "Frank School" while drunk and accompanied by her children. Specific, articulable facts-here the information from the 911 report-reasonably justified the traffic stop. There was sufficient reason for police to believe the 911 report was true and, if it was, the lives of several of Mays' children were in imminent danger. Considering the totality of the circumstances here, the officer struck the right balance between "the interests of the State in detecting, preventing, and investigating crime and the rights of individuals to be free from unreasonable intrusions." See Post , 301 Wis. 2d 1, ¶ 13. Under these circumstances, a reasonable officer would have suspected that the blue truck this officer quickly located in the area reported by the 911 caller was being driven by an intoxicated woman with several of her children in the vehicle. The 911 caller's tip "contained sufficient indicia of reliability and alleged a potential imminent danger to public safety. These factors substantially outweighed the minimal intrusion that the stop would have presented had [Mays] indeed not been intoxicated." See Rutzinski , 241 Wis. 2d 729, ¶ 37.
By the Court. -Order reversed and cause remanded for further proceedings.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

We acknowledge that in referencing the location of the vehicle in question, the 911 caller states a location that is not entirely clear on the audiotape, yet could be interpreted as "Frank School." The dispatcher subsequently repeats back to the 911 caller "Frank School" and the 911 caller does not indicate that the dispatcher's recitation of the school name as "Frank School" was incorrect. As indicated, shortly thereafter, the vehicle was found in that area. Before the circuit court, and on appeal, both parties accept that the 911 caller told dispatch that the "blue truck" was in the area of "Frank School"; thus, we will do the same.

The transcript indicates the 911 caller was available to testify at the suppression hearing for authentication purposes, however, the need never arose for her to be called to testify.

The officer testified that there was no other traffic at that location at that time.

Additionally, though Mays' driving during the ten blocks the officer followed her did not provide significant corroboration that the driver of the blue truck-Mays-was intoxicated, the circuit court did find that Mays "made a slight deviation towards the center line" before changing lanes without using a directional signal. The fact that the officer did not observe more driving of concern during these blocks would not dispel suspicion that Mays might have been intoxicated because, as the United States Supreme Court noted in Navarette , "[i]t is hardly surprising that the appearance of a marked police car would inspire more careful driving for a time." Navarette v. California , 572 U.S. 393, 403 (2014) (adding that "[e]xtended observation of an allegedly drunk driver might eventually dispel a reasonable suspicion of intoxication, but the 5-minute period in this case hardly sufficed in that regard" (emphasis added) ).

While the 911 caller may have called dispatch with the belief that she could provide her "anonymous" report to the police on the phone without the girl and her mother, i.e., "them," learning that the 911 caller was the one who called the report in to the police, there is no indication the 911 caller was of the belief that the police could not determine the 911 caller's identity and hold her accountable if the report turned out to be fabricated.